UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) No. 2:19-mj-00201-JHR<br>) |
| CUONG NGUYEN, | )<br>) |
| Defendant | ) |

### RECOMMENDED DECISION ON GOVERNMENT'S
### AND DEFENDANT'S MOTIONS TO DISMISS

Before me are the parties' competing motions to dismiss. The government moves pursuant to Federal Rule of Criminal Procedure 48(a) to dismiss the complaint against defendant Cuong Nguyen without prejudice, while the defendant seeks the dismissal of the complaint with prejudice pursuant to the Interstate Agreement on Detainers ("IAD") and the Speedy Trial Act ("STA"). *See* Government's Motion for Leave to Dismiss Complaint ("Government's Motion") (ECF No. 15) at 1; Defendant's Motion to Dismiss ("Defendant's Motion") (ECF No. 16) at 1. Because (i) the factors for dismissal laid out in the IAD weigh in favor of dismissal without prejudice, (ii) I find no violation of the STA, and, (iii) even had the STA been violated, dismissal without prejudice would be appropriate, I recommend that the court grant the Government's Motion and deny the Defendant's Motion.

### I. Background

On June 26, 2019, the government filed a one-count complaint against the defendant for alleged distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1). Government's Motion in Opposition to Defendant's Motion to Dismiss with Prejudice ("Opposition") (ECF No. 20) at 2; Criminal Complaint ("Complaint") (ECF No. 1) at 1. On the same day, I signed a warrant for the

1

defendant's arrest. Opposition at 2; Arrest Warrant (ECF No. 4). At that time, the defendant was incarcerated at the Maine Correctional Center ("MCC") for a state felony driving offense. Opposition at 2. The defendant had been scheduled to turn himself in to begin serving his nine-month sentence for that offense on January 1, 2019; however, he failed to do so. He began serving that sentence only after his arrest on May 16, 2019, on state drug charges. *Id*.

In order to transfer the defendant to federal court for his initial appearance, the government filed a motion on July 9, 2019, for a writ of habeas corpus *ad prosequendum* ("Writ"). *Id*.; Application for Writ of Habeas Corpus (ECF No. 6). Later that day, the government also requested that the United States Marshals Service put a detainer in place for the defendant. Opposition at 2. The defendant signed the detainer on July 10, 2019, and I signed the Writ on the same day. *Id.* at 2-3. The government concedes that its request for the detainer was a "mistake" resulting from its "misguided belief [that the detainer] was a predicate necessary to ensure the defendant was in federal custody in order for the writ to take effect." *Id.* at 3.

The defendant was transferred from the MCC to this court on July 17, 2019, for his initial appearance. *Id.* He waived his right to a probable cause and detention hearing, and I placed a detainer on him to be returned to federal custody at the end of his state sentence. *Id.* After spending one night in federal custody at the Strafford County Jail in New Hampshire, the defendant was returned to state custody. *Id.* at 8; Supplemental Response to Opposition to Motion to Dismiss ("Supplemental Response") (ECF No. 23) at 3.

The government filed its motion to dismiss on August 12, 2019, citing its desire to "comply with the Interstate Agreement on Detainers and mitigate numerous transfers of the defendant from state to federal custody" and noting its intent to bring charges against the defendant once he completed his state sentence. Government's Motion at 1. As of that date, the government "was

unaware of the mistake it made by requesting a detainer," but it now acknowledges that it "inadvertently violated the IAD." Opposition at 3.

The defendant filed his own motion to dismiss on August 19, 2019, arguing for dismissal of the charge against him with prejudice on the bases that the government had violated both the IAD and the STA. Defendant's Motion at 1, 7. I address each argument in turn.

## II. Discussion

### A. The Interstate Agreement on Detainers ("IAD")

The IAD – to which both Maine and the federal government are parties – was enacted to "encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 18 U.S.C. App. 2 § 2, Art. I. Article IV of the IAD allows "[t]he appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending" to "have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated." *Id.* Art. IV(a).[1] A writ of habeas corpus *ad prosequendum* constitutes a written request under the IAD. *United States v. Mauro*, 436 U.S. 340, 361-62 (1978).

Article IV(e) of the IAD provides that:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, *and the court shall enter an order dismissing the same with prejudice*.

18 U.S.C. App. 2 § 2, Art. IV(e) (emphasis added).

---

[1] For purposes of the IAD, the United States of America is considered a "state." 18 U.S.C. App. 2 § 2 Art. II(a).

The defendant initially argued that Article IV(e), both on its face and as construed by the United States Supreme Court in *Alabama v. Bozeman*, 533 U.S. 146 (2001), mandated the dismissal of the instant complaint with prejudice. *See* Defendant's Motion at 6. However, as the government notes in its Opposition, *see* Opposition at 4, and the defendant now concedes, *see* Response to Government's Opposition to Motion to Dismiss ("Response") (ECF No. 21) at 2, the IAD carves out an exception in cases in which the United States requests temporary custody, *see* 18 U.S.C. app. 2 § 9(1) ("in a case in which the United States is a receiving State . . . any order of a court dismissing any indictment, information, or complaint may be with or without prejudice").

Section 9(1) further provides that, in making that determination, "the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice[]." *Id*. The government argues that these factors weigh in favor of dismissal without prejudice, *see* Opposition at 6-8, while the defendant takes the opposite view, *see* Response at 2; Supplemental Response at 1-4. The government has the better argument.

### 1. Seriousness of the Offense

As the United States Court of Appeals for the Eighth Circuit has noted, the IAD "does not specify the criteria for analyzing the seriousness of the offense, but other courts have examined the nature of the conduct charged and the potential sentence." *United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005); *see also, e.g., United States v. Kelley*, 300 F. Supp. 2d 224, 233 (D. Mass. 2003), *aff'd* 402 F.3d 39 (1st Cir. 2005) (same).

The defendant argues that, in this case, "the unreliability of the existing evidence and the lack of additional evidence casts significant doubt on the seriousness of the offense and on whether

4

there was any offense at all." Supplemental Response at 2. The government, on the other hand, notes that distribution of fentanyl is a serious charge, and that the charged conduct occurred while the defendant "was supposed to be serving his felony state sentence." Opposition at 7.

As the defendant acknowledges, distribution of fentanyl carries a maximum term of imprisonment of 20 years. Supplemental Response at 1; 21 U.S.C. § 841(a)(1), (b)(1)(C). Moreover, in assessing the seriousness of an offense, it is appropriate for a court to consider whether the charged offense "endangers human life." *United States v. Macomber*, 717 F.3d 607, 611 (8th Cir. 2013). The distribution of fentanyl fairly can be said to do so.

While the defendant urges this court to make a determination on the reliability of the evidence, I decline to do so, instead finding that the nature of the conduct charged and the potential sentence are sufficiently serious to weigh in favor of dismissing the charge against him without prejudice. *See, e.g., United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988) ("The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence.").

## 2. Facts and Circumstances Leading to Dismissal

The defendant speculates that "it is plausible that the Government moved to dismiss, at least in part, because of an unexpected insufficiency of evidence." Supplemental Response at 2. He also notes that "the Government explicitly concedes its violation of the IAD[,]" arguing that, "taken together, it appears that the facts and circumstances leading to the Government's Motion to Dismiss amount to premature prosecution upon insufficient evidence coupled with procedural errors[.]" *Id.* at 3.

While the defendant asks this court to focus on the government's rationale for filing its motion to dismiss, the First Circuit has instead looked to "[t]he circumstances under which the

5

*violation* [of the IAD] occurred[.]" *Kelley*, 402 F.3d at 42 (emphasis added). In *Kelley*, the First Circuit concluded that the lower court correctly dismissed a charge without prejudice when the IAD violation was the result of "an inadvertent administrative error and that there was no willful violation," observing that it "would be a materially different case if the United States had acted willfully or if there were a pattern of such violations in this district." *Id.* (footnote omitted).

The defendant has not argued that there is a pattern of IAD violations in the District of Maine and has provided no evidence that the government's violation of the IAD was willful. The government admits that its belief that the detainer was necessary was "misguided" but represents that it did not act "with malice" in "request[ing] the detainer and writ simultaneously." Opposition at 7. The government also notes that "it was ultimately the writ that served as the mechanism to transport the defendant for his initial appearance." *Id.* Absent evidence that the IAD violation at issue was either willful or part of a larger pattern of violations, this factor also weighs in favor of dismissal of the charge without prejudice.

### 3. Impact of a Reprosecution

"'Analysis of [the third] factor involves an assessment of whether the IAD violation prejudiced the defendant.'" *Kelley*, 300 F. Supp. 2d at 234 (quoting *United States v. Pope*, 183 F. Supp. 2d 773, 778 (D. Md. 2001)). The defendant argues that, in light of what he perceives as the government's "unexpected insufficiency of evidence," dismissing the charge without prejudice "would infringe on [his] right to due process, his right to a speedy trial, his right to make the Government prove its case beyond a reasonable doubt, and his freedom from double jeopardy." Supplemental Response at 4. He also contends that allowing the government the opportunity to reprosecute "would suggest that the Government can violate the IAD with impunity" and amount to "a missed opportunity . . . to deter the Government, this office in particular, from committing

6

any more violations of the IAD, even violations resulting from misunderstanding, error, and mistake." *Id.*

For its part, the government notes that the defendant spent only one night in federal custody and that the Writ, not the detainer, was the mechanism actually used to transport him. Opposition at 8.[2] The government also observes that the defendant's potential sentence on the federal charge "remains the same whether charged now or in a few months." *Id.*

I am unpersuaded that the defendant was prejudiced by the IAD violation. He has not made any argument that his potential sentence will be altered as a result of his brief time in federal custody, nor does he claim that he suffered any specific harm as a result. *Compare, e.g.*, *Kelley*, 300 F. Supp. 2d at 234-35 (noting that "the IAD violation may well cause [the defendant] to serve more time in combined federal and state custody than he otherwise would have served[,]" but dismissing case without prejudice based on consideration of totality of factors); *Pope*, 183 F. Supp. 2d at 778 (examining whether a defendant was deprived of his psychotropic medication as a result of an IAD violation and subsequently prejudiced). Even assuming that dismissal of this case with prejudice would deter future IAD violations, dismissing the serious charge against this defendant with prejudice is an extreme step to take for the purpose of general deterrence. Moreover, I do not find that allowing the government the opportunity to bring the charge against the defendant at a later date denies him any substantial rights. Accordingly, this third factor also weighs in favor of dismissal without prejudice.

For the foregoing reasons, I conclude that, despite the government's admitted IAD violation, the complaint against the defendant should be dismissed without prejudice.

---

[2] The defendant also argues that he was prejudiced because he was brought across state lines to be held in federal custody at the Strafford County Jail in New Hampshire for his initial appearance. *See* Supplemental Response at 3. However, he does not clarify why his brief transfer across state lines weighs in favor of dismissing the charge with prejudice.

## B. The Speedy Trial Act ("STA")

The defendant argues, in the alternative, that the STA requires dismissal of the complaint. *Id.* *See* Response at 3. The STA mandates that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested[.]" 18 U.S.C. § 3161(b). If no indictment or information is filed within 30 days – excluding time tolled pursuant to Section 3161(h) – the complaint must be dismissed. *See* 18 U.S.C. § 3162(a)(1).

The defendant argues that the government's failure to indict him within 30 days of his July 17, 2017, arrest, violated the STA. *See* Defendant's Motion at 6. The government counters that its filing of the instant motion 26 days after the defendant's arrest tolled the running of the STA clock pursuant to Section 3161(h)(1)(D), and continues to do so. *See* Opposition at 8-9.

The government is correct. Section 3161(h)(1)(D) states that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" must be "excluded in computing the time within which an information or an indictment must be filed[.]" 18 U.S.C. § 3161(h)(1)(D). The defendant counters that the government's motion to dismiss was not a *pretrial* motion because it was "filed to terminate the prosecution" rather than "in anticipation of a trial[.]" Response at 3. However, the defendant cites no authority making that distinction, and motions to dismiss generally are treated as pretrial motions. *See, e.g.*, *United States v. Rice*, Nos. 2:09-cr-00078-JCM, 2:10-cr-00520-JCM, 2012 WL 2995686, at *1 (D. Nev. July 3, 2012) (rec. dec., *aff'd* July 23, 2012) (denying defendant's motions to dismiss when they were filed past the deadline for *pretrial* motions); *United States v. Tafoya*, 541 F. Supp. 2d 1181, 1183-84 (D.N.M. 2008) (denying defendant's motion to dismiss as untimely when it was filed past the *pretrial* motion deadline).

8

Moreover, the government's interpretation comports with Congress's use of the term "pretrial motion" in drafting the STA. *See, e.g., United States v. Cobb*, 697 F.2d 38, 42 (2d Cir. 1982), *abrogated on other grounds by Henderson v. United States*, 476 U.S. 321 (1986) ("Congress could have attacked the many problems raised by the different varieties of pretrial motions and given separate consideration to them. Wisely, it avoided such a morass and extended the exclusion to 'any pretrial motion', without distinguishing among them.").

The defendant, finally, argues that a different tolling provision in the STA – 18 U.S.C. § 3161(h)(5) – "is more pertinent to this case and suggests that the timing was not tolled by the filing of the Government's Motion to Dismiss." Response at 3. Section 3161(h)(5) provides:

> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay [is excluded] from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

18 U.S.C. § 3161(h)(5).

While Section 3161(h)(5) may apply in these circumstances, Section 3161(h)(1)(D) applies as well. The speedy trial clock was tolled when the government filed its motion to dismiss. As of today's date, the tolling period under Section 3161(h)(1)(D) will end, but the clock will be tolled yet again by Section 3161(h)(5).

In any event, even had the STA been violated, I would still conclude that the charge against the defendant should be dismissed without prejudice. The STA provides that, in determining whether to dismiss a charge with or without prejudice following an STA violation, a court must consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the STA] and on the administration of justice." *Id*. § 3162(a)(1).

9

In addition, "[t]he court may consider any other factors that are rationally related to the statutory objective of balancing public and private interests; in [the First] Circuit, we have come to describe prejudice to the defendant as the fourth factor for courts to consider." *United States v. Worthy*, 772 F.3d 42, 46 (1st Cir. 2014) (citation and internal quotation marks omitted); *see also United States v. Taylor*, 487 U.S. 326, 334 (1988) ("[T]here is little doubt that Congress intended [the presence or absence of prejudice to the defendant] to be relevant for a district court's consideration" in weighing whether to dismiss a charge with or without prejudice following an STA violation).

Analysis of whether to dismiss a charge with or without prejudice based on an STA violation, hence, is much the same as in the context of violation of the IAD.

The defendant makes three arguments specific to the alleged STA violation:

1. "First, this is a serious case, a Class C felony, conviction for which would result in an estimated Sentencing Guideline range of forty-six to fifty-seven months." Defendant's Motion at 7.

2. "Second, the facts and circumstances leading to dismissal amount to negligence on the part of the Government; the Government neglected to act in accordance with the IAD and neglected to present the case to the Grand Jury within the time limits of the [STA] – perhaps because it failed to gather sufficient evidence to formally charge the Defendant." *Id*.

3. "Lastly, the impact of a reprosecution (i.e., dismissal without prejudice) on the administration of justice in this case would be significant; the delay caused by the Government would hamper the Defendant's ability to independently investigate the case in a timely manner and would create uncertainties that could obstruct his treatment and rehabilitation during the continued execution of his state sentence." *Id*.

For the reasons discussed above in the context of the IAD violation, the fact that a charged offense is serious cuts in favor of, rather than against, dismissal without prejudice. *Hastings*, 847 F.2d at 925 ("The graver the crimes, the greater the insult to societal interests if the charges are dropped[.]"); *see also, e.g., United States v. Dessesaure*, 556 F.3d 83, 86 (1st Cir. 2009) (reversing district court's dismissal of charge with prejudice for STA violation when, *inter alia*, the seriousness of the offenses charged was "so obvious[,]"; noting that the "combination of drug trafficking and guns has imposed a grim toll on society").

For the reasons discussed above in the context of the IAD violation, neither "negligence" on the part of the government nor alleged lack of evidence in bringing a charge weighs in favor of dismissal with prejudice. As in the case of the IAD, courts focus for STA purposes on whether a violation is the product of "simple neglect[,]" weighing in favor of dismissal without prejudice, or "bad faith or intentional conduct on the part of the prosecutor[,]" weighing in favor of dismissal with prejudice. *United States v. Medugno*, 233 F. Supp. 2d 184, 186-87 (D. Mass. 2002).

The defendant's final point, encompassing the third and fourth STA factors, also would not counsel in favor of dismissal with prejudice had an STA violation occurred. With respect to the third factor, "[t]he case law does not indicate precisely how to gauge the impact of a re-prosecution on the administration of justice and the enforcement of the [STA]." *Id*. at 187. However, relevant factors include the amount of time a retrial would take, *see id*., and whether a case has already proceeded to trial, necessitating a retrial, *see, e.g. United States v. Martinez*, Criminal No. 14-327 (CCC/BJM), 2015 WL 10767368, at *7 (D.P.R. Dec. 28, 2015) (rec. dec., *aff'd* May 2, 2016). Here, rather than proceeding to trial, the government itself moved to dismiss the charge against the defendant prior to any indictment or lengthy discovery or motion practice, militating in favor of a dismissal without prejudice.

The defendant's argument that the asserted STA violation prejudiced him, likewise, falls short. He has not explained, nor is it not self-evident, how the government's delay has hampered his ability to investigate his case or might impact his treatment and rehabilitation during the remainder of his service of his state sentence. *See* Defendant's Motion at 7.

In summary, I conclude that the government did not violate the STA and that, even if it had, dismissal without prejudice would be appropriate.

### III.  Conclusion

For the foregoing reasons, I recommend that the Government's Motion be **GRANTED**, and the Defendant's Motion be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 2nd day of December, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge